Filed 9/8/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FACEBOOK, INC., et al.,<br><br>    Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN FRANCISCO CITY AND COUNTY,<br><br>    Respondent;<br><br>DERRICK D. HUNTER et al.,<br><br>    Real Parties in Interest. | A144315<br><br>(San Francisco City and County<br>Super. Ct. Nos. 13035657, 13035658) |

Use of social media, in its myriad of forms, has become ubiquitous in our society. Petitioners Facebook, Inc. (Facebook), Instagram, LLC (Instagram), and Twitter, Inc. (Twitter) each provide digital platforms on which users may post communications, commentary, photographs, video clips, or other items the user may wish to share within a social network. Evidence gathered from social media is becoming equally ubiquitous in our courtrooms. Real parties in interest Derrick Hunter and Lee Sullivan (Defendants) were indicted, and await trial, on murder, weapons, and gang-related charges stemming from a drive-by shooting. Each of the Defendants served a subpoena duces tecum on one or more of the petitioners seeking both public and private content from user accounts of the murder victim and a witness.

Petitioners moved to quash the subpoenas, objecting under the federal Stored Communications Act (SCA or Act) (§ 18 U.S.C. § 2701 et seq.)[1] to the compelled

---

[1] Undesignated statutory references are to title 18 of the United States Code.

disclosure of the content of their users' electronic communications. Section 2702(a) provides that electronic communication services "shall not knowingly divulge" the contents of a user communication to anyone, with limited exceptions (§ 2702(b)). Defendants responded that the requested information is necessary to properly defend against the pending charges, and that any statutory privacy protections afforded a social media user must yield to a criminal defendant's constitutional rights to due process, presentation of a complete defense, and effective assistance of counsel.[2]

The trial court denied petitioners' motions to quash and ordered petitioners to produce responsive material for in camera review. Petitioners filed the instant petition for writ of mandate and/or prohibition in this court. We issued an order staying the production order and requested opposition. After consideration of Defendants' answer, and petitioners' reply thereto, we denied Defendants' request to dissolve the temporary stay and issued an order requiring the respondent superior court to show cause why the relief requested by petitioners should not be granted. We now grant the petition and direct the trial court to issue an order quashing the subpoenas.

## I.    FACTUAL CONTEXT AND PROCEDURAL HISTORY[3]

On June 24, 2013, Jaquan Rice, Jr., was killed and B.K., a minor, was seriously injured in a drive-by shooting in the Bayview District of San Francisco. The vehicle used in the shooting was identified by surveillance video. While of poor quality, the video depicts one individual shooting a handgun from the rear passenger window on the driver's side. A second individual is seen exiting the rear passenger-side door and shooting from behind the rear of the vehicle with a handgun with a large attached magazine. The driver of the vehicle was not visible, but witnesses indicated that a

---

[2] As noted *post*, the record before us is not clear that Hunter joined in opposition to the motions to quash below, but he has formally joined in Sullivan's arguments in this court. For simplicity's sake, we refer to opposition below as that of the Defendants' collectively.

[3] We recite the facts as set forth by Defendants' opposition in the trial court, and we accept those facts as true for purposes of the petition unless specifically controverted by petitioners.

woman was driving. Within minutes of the shooting, prosecution witness Renesha Lee was stopped driving the vehicle. She was the sole occupant.

Hunter's 14-year-old brother was identified by several eyewitness as one of the shooters, and he confessed to the shooting when questioned by police.[4] Hunter's brother told police that he shot Rice because Rice had repeatedly threatened him in person and in social media postings on Facebook and Instagram. Rice also had "tagged" the boy in a video clip posted on Instagram that depicted guns.

Lee is Sullivan's former girlfriend. Lee gave varying accounts of the events of June 24, 2013, but ultimately told police that Defendants and Hunter's brother borrowed her car and took her home prior to the shooting.

In presenting the case to the grand jury, the prosecution contended that Defendants and Hunter's brother were members of Big Block, a criminal street gang, and that Rice was killed because he was a member of West Mob, a rival gang, and because Rice had publicly threatened Hunter's brother. In testimony before the grand jury, Inspector Leonard Broberg, a gang expert from the San Francisco Police Department Gang Task Force, opined that the murder and attempted murder were committed for the benefit of Big Block. Broberg testified that "gangsters are now in the 21st century and they have taken on a new aspect of being gangbangers, and they do something called cyber banging. They will actually be gangsters on the internet. They will issue challenges; will show signs of disrespect, whether it's via images or whether it's via the written word . . . Facebook, Instagram, Socialcam, Vine . . . [.] [¶] . . . They will disrespect each other in cyberspace." Broberg described for the grand jury a video posted by Rice on Facebook in which he rapped while giving a tour of his gang neighborhood and pointed out areas where he could be found if rival gang members wanted to find him, including the location where Rice was shot. In a subsequent declaration, Broberg averred that he "rel[ies] heavily on records from social media providers such as Facebook, Instagram, and Twitter

---

[4] Hunter's brother was tried in juvenile court and found guilty of Rice's murder and the attempted murder of B.K.

to investigate and prosecute alleged gang members for gang crime." Broberg said that he regularly relied on social media records in forming an opinion whether a particular crime is gang related. Broberg also said he relied, in part, on social media records as evidence that Rice and the Defendants were members of rival gangs and that the drive-by shooting was gang related.

Defendants were indicted and stand charged with, inter alia, the murder of Rice and the attempted murder of B.K. (Pen. Code, §§ 187, 664). Gang and firearm enhancements are alleged as to both Defendants in the indictment. (*Id*., §§ 186.22, subd. (b)(1), 12022, subd. (a), 12022.53, subds. (d) & (e)(1).)

Sullivan's counsel served subpoenas duces tecum (Pen. Code, § 1326, subd. (b)) on Facebook, Instagram, and Twitter, seeking records from the social media accounts of Rice and Lee. As to Facebook, the subpoena seeks "[a]ny and all public and private content," including, but "not limited to user information, associated email addresses, photographs, videos, private messages, activity logs, posts, status updates, location data, and comments including information deleted by the account holder" for accounts belonging to Rice and to Lee. As to Instagram, the subpoena seeks "[a]ny and all public and private content," including, but "not limited to user information, associated email addresses, photographs, videos, private messages, activity logs, posts, location data, and comments," as well as "data deleted by the account holder" associated with accounts belonging to Rice and Lee. Sullivan's subpoena to Twitter seeks similar information as to Lee only. Hunter's subpoena to Twitter seeks a subset of that information for "all accounts" registered to Lee. Sullivan's subpoenas also seek the identity of the custodian of records for petitioners who could authenticate the requested records.

Petitioners moved to quash the subpoenas, arguing that disclosure of the information sought was barred by the SCA. Defendants opposed, contending that their constitutional rights to present a complete defense, cross-examine witnesses, and a fair trial prevailed over the privacy rights of account holders under the SCA. In an offer of proof as to Lee's social media records, Sullivan alleged that Lee was the only witness who implicated him in the shootings, that the records would demonstrate Lee was

4

motivated by jealous rage over Sullivan's involvement with other women, and that Lee had repeatedly threatened others with violence. Sullivan cited examples of postings on what he said was Lee's Twitter account that included a photograph of Lee holding a gun and making specific threats. In his offer of proof as to Rice's social media records, Sullivan said review of the records was required to "locate exculpatory evidence" and to confront and cross-examine Broberg. Sullivan cited Broberg's grand jury testimony and attached examples to his opposition of what he alleged were screen shots of violent video postings by Rice, asserting that the subpoenaed records would show that Rice was "a violent criminal who routinely posted rap videos and other posts threatening [Hunter's brother] and other individuals."

Hearings on the motions to quash were held on January 7 and 22, 2015. The trial court denied petitioners' motions to quash, and ordered petitioners to produce responsive material for an in camera review by February 27.[5] Petitioners filed a petition for writ of mandate in this court contending that the trial court abused its discretion in denying the motion to quash, and seeking a stay of the order to produce the requested materials. On February 26, we stayed the production order pending consideration of the petition and requested opposition. Sullivan submitted an answer, in which Hunter joined. On March 30, we issued an order to show cause to the respondent superior court why the relief requested in the petition should not be granted, and we declined Defendants' request to dissolve the stay. Sullivan filed a return to the order to show cause, in which Hunter joined, and to which petitioners filed a reply.[6]

---

[5] Hunter apparently did not oppose Twitter's motion to quash his subpoena, but the trial court nonetheless denied that motion on the same basis as its denial of the motions to quash Sullivan's subpoenas.

[6] We subsequently granted application of the Public Defender of the City and County of San Francisco to appear as amicus curiae on behalf of the respondent trial court and Defendants. We also granted the applications of California Attorneys for Criminal Justice, the California Public Defenders Association, and the Public Defender of Ventura County to appear as amici curiae on behalf of Defendants.

## II. DISCUSSION

The issues of statutory interpretation and constitutional challenges presented are purely ones of law. We therefore exercise de novo review and accord no deference to the trial court's ruling. (*People ex rel. Lockyer v. Sun Pacific Farming Co.* (2000) 77 Cal.App.4th 619, 632.)

A. *Petitioners*

Petitioners operate social networking sites. Social network sites are Web-based services that allow individuals to create a public profile, create a list of users with whom to share connections, and view their list of connections and those made by others within the system. (Boyd & Ellison, *Social Network Sites: Definition, History, and Scholarship* (2008) 13 J. of Computer-Mediated Comm. 210, 211.)

Facebook was founded in 2004 and is an online social networking service. After registering to use the site, users can create a user profile, add other users as "friends," exchange messages, post status updates and photos, share videos and receive notifications when others update their profiles. As of June 2015, it claimed 968 million daily active users, and 1.49 billion monthly active users. (Facebook, *Company Info* <https://newsroom.fb.com/company-info/> [as of Sept. 8, 2015].) Instagram was launched in 2010, and is an online mobile photo-sharing, video-sharing and social networking service that enables its users to take pictures and videos, and share them on other social networking platforms. It reports 300 million monthly active users, posting an average of 70 million photographs per day, and over 30 billion photographs shared on its site. (Instagram, *Our Story* <https://instagram.com/press/> [as of Sept. 8, 2015].) Twitter was created in 2006 and is a public social networking website where users can write and respond to short messages called "tweets." Registered users can read and post tweets, but unregistered users can only read them. Twitter has its own integrated photo-sharing service that enables users to upload a photo and attach it to a tweet. Twitter messages are public, but users can also send private messages. Twitter reports that, as of June 2015, it had more than 500 million tweets sent per day and more than 316 million

monthly active users.  (Twitter, *Company* <https://about.twitter.com/company> [as of Sept. 8, 2015].)

B.      *The SCA*

The SCA is a part of the Electronic Communications Privacy Act (Pub.L. No. 99-508 (Oct. 21, 1986) 100 Stat. 1860).  (See Stuckey & Ellis, Internet and Online Law (2015) § 5.02[4], p. 5-18.1 (rel. # 37).)  "The [Electronic Communications] Privacy Act creates a zone of privacy to protect internet subscribers from having their personal information wrongfully used and publicly disclosed by 'unauthorized private parties.' " (*In re Subpoena Duces Tecum to AOL, LLC* (E.D.Va. 2008) 550 F.Supp.2d 606, 610.) Congress's intention in enacting the SCA was to protect from disclosure private, personal information that happens to be stored electronically.  (*AOL*, at p. 610, citing Sen.Rep. No. 99-541, p. 3 (1986), reprinted in 1986 U.S. Code Cong. & Admin. News, pp. 3555, 3557.)

"The SCA declares that, subject to certain conditions and exceptions, 'a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service . . . .'  ( . . . § 2702(a)(1).)  Similarly, but subject to certain additional conditions, 'a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service . . . .'  ( . . . § 2702(a)(2).)" (*O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1440 (*O'Grady*).)  The SCA "protects individuals' privacy and proprietary interests.  The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility.  Just as trespass protects those who rent space from a commercial storage facility to hold sensitive documents, [citation], the Act protects users whose electronic communications are in electronic storage with an [Internet Service Provider] or other electronic communications facility." (*Theofel v. Farey-Jones* (9th Cir. 2004) 359 F.3d 1066, 1072–1073.)  It is undisputed that the materials Defendants seek here are subject to the SCA's protections.

7

"The SCA enumerates several exceptions to the rule that service providers may not disclose the contents of stored messages.  Among the disclosures authorized are those that are incidental to the provision of the intended service (see . . . § 2702(b)(1), (4), (5)); incidental to the protection of the rights or property of the service provider ( . . . § 2702(b)(5)); made with the consent of a party to the communication or, in some cases, the consent of the subscriber (see . . . § 2702(b)(3)); related to child abuse ( . . . § 2702(b)(6)); made to public agents or entities under certain conditions ( . . . § 2702(b)(7), (8)); related to authorized wiretaps ( . . . §§ 2702(b)(2), 2517, 2511(2)(a)(ii)); or made in compliance with certain criminal or administrative subpoenas issued in compliance with federal procedures ( . . . §§ 2702(b)(2), 2703)." (*O'Grady, supra,* 139 Cal.App.4th at p. 1441.)  " 'All other disclosures—including disclosures of content pursuant to a third party subpoena in civil litigation—are prohibited.' " (*Id*. at p. 1443, fn. 10; Stuckey & Ellis, Internet and Online Law, *supra*, § 5.02[4][b], p. 5-19 (rel. # 37).)

In *O'Grady,* Apple Computer sought and obtained authority from the trial court, inter alia, to subpoena information from an e-mail service provider for a Web site publisher in order to identify the source of unauthorized publication of Apple's confidential product information.  The trial court denied the provider's request for a protective order.  (*O'Grady, supra,* 139 Cal.App.4th at p. 1431.)  Construing the absence of any exception for civil discovery subpoenas in the text of the statute as intentional, the Sixth District reversed and held that the subpoena to the e-mail service provider "cannot be enforced consistent with the plain terms of the [SCA]." (*O'Grady*, at pp. 1432, 1447.) Federal decisions are in accord.  (See *Mintz v. Mark Bartelstein & Associates, Inc.* (C.D.Cal. 2012) 885 F.Supp.2d 987, 991–992 ["[t]he SCA does not contain an exception for civil discovery subpoenas"]; *Crispin v. Christian Audigier, Inc.* (C.D.Cal. 2010) 717 F.Supp.2d 965, 976 [same]; *In re Subpoena Duces Tecum to AOL, LLC, supra,* 550 F.Supp.2d at p. 611 ["the clear and unambiguous language of § 2702 . . . does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas"]; *Flagg v. City of Detroit* (E.D.Mich. 2008) 252 F.R.D. 346, 350 ["§ 2702 . . .

8

lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order"]; *Viacom Intern. Inc. v. Youtube Inc.* (S.D.N.Y. 2008) 253 F.R.D. 256, 264 ["§ 2702 contains no exception for disclosure of [private videos and data revealing their contents] pursuant to civil discovery requests"].)

In the criminal context, the SCA provides for disclosure of the content of an electronic communication to a governmental agency, without notice to the subscriber or customer, "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." (§ 2703(a), (b)(1)(A).)[7] Disclosure of the communication content may also be compelled by a "governmental entity," with notice to the subscriber by (1) "administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena" (§ 2703(b)(1)(B)(i)); or (2) a court order for disclosure "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation" (§ 2703(d), (b)(1)(B)(ii)). Several courts have recognized that users have a Fourth Amendment reasonable expectation of privacy in electronic communications " 'that are stored with, or sent or received through, a commercial [Internet Service Provider]' " and that a warrant, based on probable cause, may be required to obtain communication content. (*U.S. v. Warshak* (6th Cir. 2010) 631 F.3d 266, 288 [holding the SCA unconstitutional to the extent that it would permit the government to obtain the content of the defendant's e-mails without a warrant]; see *U.S. v. Hanna* (6th Cir. 2011) 661 F.3d 271, 287 & fn. 4; *U.S. v. Lucas* (6th Cir. 2011) 640 F.3d 168, 178.) "As some forms of

---

[7] In the instant case, the People obtained and served search warrants for several of Rice's social media communications.

communication begin to diminish, the Fourth Amendment must recognize and protect nascent ones that arise." (*Warshak,* at p. 286.)

The SCA provides no direct mechanism for access by a criminal defendant to private communication content, and "California's discovery laws cannot be enforced in a way that compels . . . disclosures violating the Act." (*Negro v. Superior Court* (2014) 230 Cal.App.4th 879, 889; *id.* at p. 888; see *O'Grady, supra,* 139 Cal.App.4th at p. 1451 [enforcing civil subpoenas to obtain identities of sources of published content from e-mail service providers would violate SCA and offend the principle of federal supremacy].)

Defendants insist that, notwithstanding constraints of the SCA, the subpoenaed materials are necessary to ensure their right to present a complete defense to the charges against them, and that their Fifth Amendment guarantee of due process and Sixth Amendment right to compulsory process are implicated. (See *Holmes v. South Carolina* (2006) 547 U.S. 319, 324 [federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense].) Moreover, they argue that their Sixth Amendment rights to effective assistance of counsel and confrontation of the witnesses against them require that they be given the opportunity to conduct reasonable pretrial investigation of the prosecution's case. Defendants, and amici curiae, assert that the SCA is unconstitutional to the extent that it precludes access by a criminal defendant to information potentially material to his or her defense. We think that Defendants overstate the extent of constitutional support for their claims.

C. *Criminal Defense Discovery*

"There is no general constitutional right to discovery in a criminal case, and . . . '[t]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .' " (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559; see *United States v. Ruiz* (2002) 536 U.S. 622, 629; *Wardius v. Oregon* (1973) 412 U.S. 470, 474.) In California, at least as to nonprivileged information, "[t]he defendant generally is entitled to discovery of information that will assist in his defense or be useful for

10

impeachment or cross-examination of adverse witnesses." (*People v. Jenkins* (2000) 22 Cal.4th 900, 953.)

      1.    *Sixth Amendment*

The Sixth Amendment to the United States Constitution protects both the right of confrontation and the right of compulsory process: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor." Both clauses are binding on the States under the Fourteenth Amendment. (*Pointer v. Texas* (1965) 380 U.S. 400, 403–406 [confrontation clause]; *Washington v. Texas* (1967) 388 U.S. 14, 17–19 [compulsory process clause].)

      a.    *Confrontation/Cross-Examination*

"The Confrontation clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." (*Pennsylvania v. Ritchie* (1987) 480 U.S. 39, 51 (plur. opn. Powell, J.) (*Ritchie*), citing *Delaware v. Fensterer* (1985) 474 U.S. 15, 18–19.)

In *Davis v. Alaska* (1974) 415 U.S. 308, 320–321 (*Davis*), the Supreme Court found a violation of the confrontation clause in a trial court's refusal to allow the defendant to impeach at trial the credibility of a key prosecution witness with the witness's probationary status resulting from a juvenile delinquency adjudication. The trial court granted a prosecution protective order, precluding cross-examination concerning the witness's juvenile record, on the basis that the records were confidential under Alaska law. (*Id.* at p. 311 & fns. 1, 2.) Noting that the "primary interest" secured by the right of confrontation is the right of cross-examination (*id.* at p. 315), the Supreme Court found that the state's policy interest in protecting the confidentiality of a juvenile offender's record "cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." (*Id.* at p. 320.)

Subsequently, in *Ritchie*, the Supreme Court considered the application of *Davis* to *pretrial* discovery. While no majority consensus emerged concerning the proper application of the confrontation clause to the pretrial discovery issue presented, four

11

justices expressed the view that "the right to confrontation is a *trial* right . . . ." (*Ritchie, supra,* 480 U.S. at p. 52 (plur. opn. of Powell, J.); *People v. Hammon* (1997) 15 Cal.4th 1117, 1126 (*Hammon*).) The defendant, Ritchie, was convicted of various sexual offenses with his minor daughter. Prior to trial, Ritchie attempted to subpoena confidential records from a state protective services agency which had investigated the abuse allegations. The agency refused to comply with the subpoena, claiming that the records were privileged under Pennsylvania law. Ritchie argued that he was entitled to information in the agency file because it might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence. The trial judge declined to order production. (*Ritchie*, at pp. 43–45.) The high court of Pennsylvania concluded that "Ritchie, through his lawyer, [was] entitled to review the entire file to search for any useful evidence." (*Id.* at p. 46, fn. omitted.) Applying a due process analysis, the Supreme Court majority rejected the idea that a defendant's right to discover exculpatory evidence would include "unsupervised authority to search through the [agency] files." (*Ritchie, supra,* 480 U.S. at p. 59; see *id.* at pp. 58–61 [concluding in camera review of agency file sufficient to protect Ritchie's interests].)

A plurality of the Supreme Court also rejected the view that the trial court interfered with Ritchie's confrontation clause right of cross-examination by denying him pretrial access to information he contended was necessary to prepare his defense. (*Id.* at p. 51 (plur. opn. Powell, J.).) "The opinions of this Court show that the right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination" and "[n]othing in the case law" supports the view that the confrontation clause creates "a constitutionally compelled rule of pretrial discovery." (*Id.* at p. 52.) The plurality found that Ritchie's due process rights were sufficiently protected by in camera review *at trial* of the confidential files to determine if they contained information material to his defense.[8] (*Id.*

_____

[8] Three justices indicated that, in some circumstances, denial of a defendant's *pretrial* access to information that is needed for effective cross-examination could violate the confrontation clause. (*Ritchie, supra,* 480 U.S. at pp. 61–66 (conc. opn. of

at pp. 53–54; see *Weatherford v. Bursey, supra,* 429 U.S. at pp. 547, 559 [no due process violation in prosecution's pretrial failure to reveal identity of undercover informant whose trial testimony was unfavorable to the defendant].)

Our own Supreme Court has repeatedly declined to recognize a Sixth Amendment right to defense pretrial discovery of otherwise privileged or confidential information. In *People v. Webb* (1993) 6 Cal.4th 494, the defense subpoenaed psychiatric records of a witness in a capital murder case, arguing entitlement to any information in the records affecting the competence or credibility of the witness in order to " 'fairly cross-examine' " her. (*Id*. at p. 516.) The trial court conducted in camera review of the records and provided limited disclosure. The defendant, citing *Ritchie*, contended that limited pretrial disclosure of the psychiatric records prejudicially undermined his right to cross-examine the witness effectively at trial. (*Webb*, at p. 517.) The court refused to read *Ritchie* as broadly as defendant urged, and questioned whether the defendant had any constitutional right to examine the records at all, even if material, in light of the strong policy protecting a patient's treatment history. "Simply stated, it is not clear whether or to what extent the confrontation or compulsory process clauses of the Sixth Amendment grant pretrial discovery rights to the accused." (*Webb*, at pp. 517–518.)

Our high court again considered the extent of pretrial defense discovery of otherwise privileged information in *Hammon, supra,* 15 Cal.4th 1117. In that case, the defense served subpoenas duces tecum on psychotherapists who had treated the complaining witness in a sexual molestation case, claiming the records would be necessary to challenge the witness's credibility. The trial court granted the People's motion to quash the subpoenas. (*Id.* at pp. 1119–1121.) Noting the lack of a majority consensus in *Ritchie* on the proper application of the confrontation clause, the *Hammon* court observed that "it is not at all clear 'whether or to what extent the confrontation or

---

Blackmun, J.); *id.* at pp. 66–72 (dis. opn. of Brennan, J.).) The two remaining justices expressed no view on this issue. (See *id.* at pp. 72–78 (dis. opn. of Stevens, J. [concluding that the writ of certiorari should have been dismissed for want of a final judgment].)

compulsory process clauses of the Sixth Amendment grant pretrial discovery rights to the accused.' " (*Hammon*, at p. 1126.)

In declining to extend a defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information, our Supreme Court expressly overruled a series of intermediate appellate cases interpreting *Davis, supra,* 415 U.S. 308, to require pretrial disclosure of privileged information when a defendant's need for the information outweighed the confidentiality interest. (*Hammon, supra,* 15 Cal.4th at p. 1123.) The *Hammon* court found that *People v. Reber* (1986) 177 Cal.App.3d 523 (permitting pretrial discovery of a complaining witness's psychotherapy records) and cases following that decision were "not correct." (*Hammon*, at p. 1123.) "In authorizing disclosure before trial . . . *Reber* went farther than *Davis* required, with insufficient justification." (*Hammon*, at p. 1123.) "We do not . . . see an adequate justification for taking such a long step in a direction the United States Supreme Court has not gone." (*Id.* at p. 1127.) The high court recognized that *at trial*, a trial court might be called upon to balance a defendant's need for cross-examination and the policies supporting a statutory or constitutional privilege, but also noted that entertaining such requests pretrial—when the trial court would not typically have sufficient information to conduct the inquiry—presented a serious risk of unnecessary invasion of statutory privilege. (*Ibid*.)

In *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, the trial court issued protective orders in a jail homicide case, permitting the prosecution to withhold the names of witnesses, both pretrial and during testimony at trial. (*Id*. at pp. 1128–1130.) The Supreme Court found the order valid to the extent it permitted *pretrial* nondisclosure of the witnesses' identities, rejecting the argument that nondisclosure violated the defendants' constitutional rights to due process of law and to confront the witnesses against them.[9] (*Id.* at pp. 1132, 1134–1136; see *Weatherford v. Bursey, supra*, 429 U.S.

---

[9] As we discuss *post*, the court in *Hammon, supra,* 15 Cal.4th 1117, suggested a different result regarding nondisclosure at trial.

at pp. 559–561 [no constitutional violation where prosecution surprised the defendant at trial by calling to the stand a previously undisclosed witness].)  In *People v. Valdez* (2012) 55 Cal.4th 82, our high court again approved a trial court order, issued pursuant to Penal Code section 1054.7,[10] delaying and limiting disclosure of the identities of prosecution witnesses to protect the safety of those witnesses.  (*Valdez,* at pp. 101–105.) The court again found no authority for any contention that "section 1054.7, insofar as it authorizes 'the denial of pretrial disclosure' based on concerns for witness safety, is 'unconstitutional under either the confrontation or the due process clause.' " (*Valdez,* at p. 106; see *People v. Maciel* (2013) 57 Cal.4th 482, 506–510 [rejecting similar claims by a different defendant regarding the same protective orders].)

In sum, there is little, if any, support for Defendants' claim that the confrontation clause of the Sixth Amendment mandates disclosure of otherwise privileged information for purposes of a defendant's pretrial investigation of the prosecution's case.

b.    *Compulsory Process*

We find even less support for Defendants' contention that the compulsory process clause of the Sixth Amendment separately authorizes the trial court's order here.  The Supreme Court "has had little occasion to discuss the contours of the Compulsory Process Clause." (*Ritchie, supra,* 480 U.S. at p. 55.)  The cases provide that "at a minimum . . . criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses *at trial* and the right to put *before a jury* evidence that might influence the determination of guilt." (*Id*. at p. 56, italics added, citing *Chambers v. Mississippi* (1973) 410 U.S. 284, *Cool v. United States* (1972) 409 U.S. 100, and *Washington v. Texas, supra,* 388 U.S. 14.)  The *Ritchie* majority concluded that "compulsory process provides no *greater* protections in this area than

_____

[10] Penal Code section 1054.7 permits disclosure of discovery information otherwise required to be provided to a criminal defendant at least 30 days before trial to be "denied, restricted, or deferred" for "good cause," limited to "threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement."

15

those afforded by due process," and that claims such as this are better evaluated "under the broader protections of the Due Process Clause of the Fourteenth Amendment" addressing the fundamental fairness of trials. (*Ritchie*, at p. 56.)

Our own Supreme Court has rejected a claim that a defendant was denied his Sixth Amendment right to effective counsel when he was denied access to an FBI database for use in cross-examination of a prosecution expert, allegedly thereby compromising his right to present a meaningful defense, a fair opportunity to be heard, and the constitutional right to reliable factfinding. (*People v. Prince* (2007) 40 Cal.4th 1179, 1233–1234.) Similar to Defendants' contentions here, Prince argued that lack of access to the database " 'depriv[ed] [him] of evidence clearly bearing on the credibility of key prosecution witnesses.' " (*Id*. at p. 1234.) Finding it unnecessary to address the claim on evidence in the record, the court nevertheless noted that "[t]o the extent defendant's claim concerns pretrial discovery and is based upon the confrontation or compulsory process clauses of the Sixth Amendment, it is on a weak footing. 'As we have previously observed, in light of the divided views of the justices of the Supreme Court . . . it is not at all clear "whether or to what extent the confrontation or compulsory process clauses of the Sixth Amendment grant pretrial discovery rights to the accused." ' " (*Prince,* at p. 1234 & fn. 10; see *People v. Clark* (2011) 52 Cal.4th 856, 982–983 [rejecting a claim that failure to disclose witness's misdemeanor conviction prior to guilt phase of capital trial deprived defendant of compulsory process and confrontation rights, and declining to "recognize a Sixth Amendment violation when a defendant is denied discovery that results in a significant impairment of his ability to investigate and cross-examine a witness"].)

2. *Fifth Amendment and Due Process*

Defendants and amici curiae argue that failure to provide pretrial discovery would deny Defendants their due process rights to meaningfully prepare and present a defense to the charges against them. They more broadly assert that the SCA is unconstitutional to the extent that it denies them access to information available to the prosecution through search warrant, subpoena, or court order.

16

To prevail on a claim that a statute violates due process, a defendant "must carry a heavy burden.  The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.  [Citations.]  In the due process context, defendant must show that [the statute] offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  (*People v. Falsetta* (1999) 21 Cal.4th 903, 912–913; see *Patterson v. New York* (1977) 432 U.S. 197, 201–202.)  Fundamental principles of justice are those " ' " 'which lie at the base of our civil and political institutions' [citation] and which define 'the community's sense of fair play and decency.' " ' " (*Falsetta*, at p. 913, quoting *Dowling v. United States* (1990) 493 U.S. 342, 353.)

The observation of the United States Supreme Court that " '[t]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .' " (*Wardius v. Oregon, supra,* 412 U.S. at p. 474; *Weatherford v. Bursey, supra*, 429 U.S. at p. 559) has been repeated often by our own high court.  (*People v. Williams* (2013) 58 Cal.4th 197, 259; *People v. Maciel, supra,* 57 Cal.4th at p. 508; *People v. Valdez, supra,* 55 Cal.4th at pp. 109–110.)  In *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, our Supreme Court rejected a due process challenge to Evidence Code section 1045, subdivision (b), limiting defense discovery of complaints of police officer misconduct to a five year window.  The defendant argued that enforcement of the limitation would unduly infringe his right to a fair trial, and that information older than five years old might qualify as evidence favorable to the accused that is material to guilt or punishment under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).  (*City of Los Angeles,* at p. 7.)  The court found no due process "fundamental principle of justice" implicated.  (*Id.* at p. 12.)  The court has separately observed that *Brady* merely serves " 'to restrict the prosecution's ability to *suppress* evidence rather than to provide the accused a right to criminal discovery.' " (*People v. Morrison* (2004) 34 Cal.4th 698, 715, italics added.)

17

D.    *Other Access to Information and Reciprocity*

As petitioners correctly note, Defendants are not wholly precluded from access to much of the information that they now seek by subpoena. The prosecution has obtained at least some of Rice's Facebook and Instagram communications pursuant to search warrant, as authorized by the SCA.[11] Defendants do not suggest why they would not be entitled to receive copies of those communications, either as general criminal discovery required under Penal Code section 1054.1,[12] or as potentially exculpatory *Brady* material.

---

[11] Defendants argued in the trial court, and contend here, that production of subscriber information, including complete social media profiles for Lee and Rice, is necessary to permit authentication of relevant postings already in their possession. Petitioners assert that the subscriber data is unnecessary for this purpose since actual postings may be self-authenticating. (See *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435 [printouts of MySpace Web pages sufficiently authenticated by personal photographs, communications, and other details confirming that the pages belonged to defendant]; see also Evid. Code, §§ 1410 [no restriction on "the means by which a writing may be authenticated"], 1421 [authenticity may be established by the contents of the writing]; Joseph, *Authentication: What Every Judge and Lawyer Needs to Know About Electronic Evidence* (Autumn 2015) 99 Judicature 49, 51–53.) Petitioners further disclaim any ability to actually confirm the identity of the person or persons making a posting on a user account. Defendants and amici curiae point to the difficulties encountered at the juvenile court trial of Hunter's brother when Lee refused to acknowledge what Defendants believe to be postings on her Twitter account that included a photograph of Lee holding a gun and making threats of violence to others. This conflict merely serves to bolster our conclusion that the necessity of disclosure is best determined by a trial judge in the context of the evidence presented at trial.

[12] Penal Code section 1054.1 provides, "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. (b) Statements of all defendants. (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. (e) Any exculpatory evidence. (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

(See *U.S. v. Pierce* (2d Cir. 2015) 785 F.3d 832, 841–842 [declining to address constitutional challenge to the SCA for failure to provide reciprocal discovery rights where defendant otherwise obtained material from witness's Facebook account, and dismissing as speculative the suggestion that additional relevant exculpatory material might have been in the account].)  The due process clause of the federal Constitution requires the prosecution "to disclose to the defense evidence in its possession that is favorable to the accused and material to the issues of guilt or punishment." (*People v. Jenkins, supra,* 22 Cal.4th at p. 954.)

Defendants respond that access only to records that tend to support the prosecution's theory of the case does not provide them with the complete materials necessary to present a full defense.  They argue the SCA establishes "a one-sided, arbitrary, and unconstitutional preference that the government, but not the defense, is entitled to access to relevant electronic evidence."  They assert that such a disparity in treatment is prohibited by *Wardius v. Oregon, supra,* 412 U.S. 470.  In *Wardius,* the Unites States Supreme Court struck down a state statute that required the defendant to disclose the names of his alibi witnesses, but did not require the prosecution to disclose the names of its witnesses.  (*Id*. at pp. 471–472 & fn. 3.)  "[A]lthough the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded [citation], it does speak to the balance of forces between the accused and his accuser." (*Id.* at p. 474.)  The court held that "in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." (*Id*. at p. 475.)  The discovery in *Wardius*, however, did not involve disclosure of privileged or confidential information, and a variety of investigative and evidence collection procedures are routinely available to governmental agencies that are not provided to a criminal defendant.  The prosecution, for example, can obtain search warrants and compel attendance of witnesses before a grand jury.  Because the concern of the due process clause is "the right of the defendant to a fair trial," the focus of the reciprocity inquiry under the due process clause is whether any lack of reciprocity " 'interferes with the defendant's ability to secure a fair trial.' " (*People v. Hansel* (1992) 1 Cal.4th 1211,

19

1221.)  Thus, "mere mechanical repetition of the word 'reciprocity' is not enough to show that [a defendant's] right to a fair hearing [has been] violated."  (*Ibid*., fn. omitted.)

In *People v. Valdez, supra*, 55 Cal.4th 82, our Supreme Court rejected a defendant's challenge to protective orders entered in a gang-related homicide case, delaying disclosure of the identity of prosecution witnesses and permitting the prosecution to attend and transcribe defense interviews of prosecution witnesses.  (*Id.* at pp. 93–94, 119–120.)  Valdez challenged the order authorizing prosecution attendance at witness interviews on due process grounds, alleging that, by granting this discovery to the prosecution " 'but not providing [him] with a reciprocal right, the trial court upset the "balance of forces between the accused and [the] accuser," in violation of [his] right to due process under the Fourteenth Amendment.' "  (*Id.* at p. 120.)  The Supreme Court disagreed.  "The inquiry is not whether 'the procedures available to the defendant . . . precisely mirror[ed] those available to the prosecution,' but whether the defendant received 'a full and fair opportunity to present' a defense and whether the rules at issue 'tilt[ed] the balance toward the state to any significant degree.'  [Citation.] . . . [T]o the extent there was any nonreciprocity, the prosecution made 'a strong showing of state interests' to justify the trial court's order."  (*Id.* at pp. 120–121.)

Defendants insist the SCA must yield to their statutory right to obtain records necessary to investigate a case and present a compete defense through use of a criminal subpoena duces tecum.  (Pen. Code, § 1326.)  They urge that the confidential nature of the information obtained is adequately protected by the requirement that the records of a nonparty be delivered to the court, and by the ability of the court to hold an in camera hearing to determine the relevance of the material sought.

Defendants are correct that issuance of a subpoena duces tecum pursuant to Penal Code section 1326 does not "entitle" the person on whose behalf it is issued to obtain access to the subpoenaed records "until a judicial determination has been made that the person is legally entitled to receive them."  (*People v. Blair* (1979) 25 Cal.3d 640, 651.)  The difficulty presented in the pretrial setting, however, is that no prior notice is required to the individual whose records are subpoenaed (cf. Code Civ. Proc., § 1985.3, subd. (b)),

20

and the existence of the responsive documents may not even be disclosed to the prosecution (see Pen. Code, § 1326, subd. (c)).[13]  Such a nonadversarial ex parte process is ill-suited to adjudication of contested issues of privilege.  While the court "*may* order an in camera hearing to determine whether or not the defense is entitled to receive the documents" (*ibid.*) and *may* elect to invite the prosecution to participate in and argue at a hearing on a defense subpoena duces tecum (see *Kling v. Superior Court* (2010) 50 Cal.4th 1068, 1072; *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 750), the court would still be unlikely to have any context to make a meaningful evaluation pretrial, and in most instances would not have the benefit of an adversarial response.  Absent response by the service provider, as here, the court may not even be cognizant of objections to production, and of the level of in camera scrutiny required.  As noted *ante*, our Supreme Court has previously found "persuasive reason[s]" not to permit pretrial disclosure of privileged or confidential information, and observed that there was "risk inherent in entertaining such pretrial requests." (*Hammon*, *supra*, 15 Cal.4th at p. 1127.)  "When a defendant proposes to impeach a critical prosecution witness with questions that call for privileged information, the trial court may be called upon, as in [*Davis, supra,* 415 U.S. 308] to balance the defendant's need for cross-examination and the state policies the privilege is intended to serve.  [Citation.]  Before trial, the court typically will not have sufficient information to conduct this inquiry; hence, if pretrial disclosure is permitted, a serious risk arises that privileged material will be disclosed unnecessarily." (*Hammon*, at p. 1127.)  A defendant's general right to issue subpoenas

---

[13] Penal Code section 1326 provides in relevant part:  "In a criminal action, no party, or attorney or representative of a party, may issue a subpoena commanding the custodian of records or other qualified witness of a business to provide books, papers, documents, or records, or copies thereof, relating to a person or entity other than the subpoenaed person or entity in any manner other than that specified in subdivision (b) of Section 1560 of the Evidence Code.  When a defendant has issued a subpoena to a person or entity that is not a party for the production of books, papers, documents, or records, or copies thereof, the court may order an in camera hearing to determine whether or not the defense is entitled to receive the documents.  The court may not order the documents disclosed to the prosecution except as required by Section 1054.3."

21

duces tecum to private persons "provides no basis for overriding a statutory and constitutional privilege." (*Id.* at p 1128.)

Moreover, accepting Defendants' argument would lead to an anomalous result. In order to obtain third party confidential information protected by the SCA, a governmental entity would have to obtain a search warrant, authorized in advance by a magistrate on a sufficient showing of probable cause (§ 2703(a), (b)(1)(A)),[14] or provide notice to the subscriber in order for an administrative or trial subpoena to issue (§ 2703(b)(1)(B)(i)). However, a criminal defendant could procure such confidential information simply by serving an ex parte subpoena duces tecum with no required notice to the subscriber or prosecuting authority—and which may, or may not, be subject to meaningful judicial review.[15]

In sum, we find no support for the trial court's order for pretrial production of information otherwise subject to the SCA's protections. The consistent and clear teaching of both United States Supreme Court and California Supreme Court

---

[14] A very recent federal decision of the Fourth Circuit has held that a law enforcement agency may obtain at least some data protected by the SCA (in that instance, cell site location information) only by a search warrant, supported by a showing of probable cause, and may not obtain the information under the lesser reasonable suspicion standard required for a court order under section 2703(d). (*United States v. Graham* (4th Cir. Aug. 5, 2015, Nos. 12-4659, 12-4825) 2015 U.S.App.Lexis 13653 [" 'specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought . . . are relevant and material to an ongoing criminal investigation' "].)

[15] At least one court has also noted the severe administrative burdens on service providers that compliance with routine subpoenas would impose, "interfering with the manifest congressional intent to encourage development and use of digital communications." (*O'Grady, supra,* 139 Cal.App.4th at p. 1446.) The burdens imposed would be substantially greater if service providers were regularly required to respond to (and object to) routine pretrial subpoenas on criminal matters, when the overwhelming majority of those matters will never result in a trial at all. (See Judicial Council of Cal., Rep. on Court Statistics: Statewide Caseload Trends 2003–2004 Through 2012–2013 (2014) pp. 47–48 <http://www.courts.ca.gov/documents/2014-Court-Statistics-Report.pdf> [as of Sept. 8, 2015].) The burdens imposed on our courts, already struggling with constrained resources, in conducting hearings that would ultimately be unnecessary would be equally severe.

jurisprudence is that a criminal defendant's right to *pretrial* discovery is limited, and lacks any solid constitutional foundation. Simply alleging that the material they seek might be helpful to their defense does not meet Defendants' burden to show that the SCA is unconstitutional in denying them access to protected information *at this stage of the proceedings*. Accordingly we grant the writ and direct that the trial court vacate its order.

We emphasize that our ruling is limited to the pretrial context in which the trial court's order was made.[16] Nothing in this opinion would preclude Defendants from seeking at trial the production of the materials sought here (or petitioners again seeking to quash subpoenas), where the trial court would be far better equipped to balance the Defendants' need for effective cross-examination and the policies the SCA is intended to serve.[17]

---

[16] At oral argument, Sullivan's counsel represented that the proposed in camera hearing contemplated in the trial court's order would have occurred only one day before trial, and so should not be considered a "pretrial" proceeding. Counsel did not suggest what temporal proximity would make a hearing part of the trial. Nor did counsel suggest how this would cure the basic difficulty of having someone other than the *trial* judge weigh the confidentiality interests against a defendant's need for the information, in the context of the evidence. Whether the balance weighs in favor of disclosure may ultimately depend on developments at trial, including for example, whether and how a witness testifies, or what other evidence the prosecution seeks to introduce. In *Hammon*, for example, the defendant sought disclosure of the victim's psychotherapy records on the theory that the records would provide evidence of the victim's lack of credibility and her propensity to fantasize. At trial, the defendant admitted engaging in sexual conduct with the victim "thus largely invalidating the theory on which he had attempted to justify pretrial disclosure of privileged information." (*Hammon, supra*, 15 Cal.4th at p. 1127.)

[17] We find no case that has yet addressed whether a criminal defendant may ask the court to issue a "trial subpoena" under § 2703(b)(1)(B)(i) for production of information under the SCA. The statute, on its face, limits production to a subpoena issued by "a governmental entity," and at least one federal trial court has held that neither the court nor the federal public defender are governmental entities under the SCA. (*U.S. v. Amawi* (N.D.Ohio 2008) 552 F.Supp.2d 679, 680 ["court order" for disclosure sought under section 2703(d)]; see *F.T.C. v. Netscape Communications Corp.* (N.D.Cal. 2000) 196 F.R.D. 559, 561 [pretrial subpoena duces tecum not a "trial subpoena" under § 2703(c)(1)(C) and Federal Rules of Civil Procedure].) Although the issue is not now before us, we question whether such a limitation would be constitutional in light of the requirements of *Davis* and *Hammon*. Defendants may, in any event, directly subpoena

## III.   DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its January 22, 2015 order denying petitioners' motion to quash the subpoenas for the social media records of Jaquan Rice, Jr., and Renesha Lee, and to thereafter enter a new and different order granting petitioners' motion to quash.  The previously issued stay shall dissolve upon issuance of the remittitur.  (Cal. Rules of Court, rule 8.490(d).)

---

the records they seek for production to the trial court pursuant to Penal Code section 1326.

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

MARGULIES, J.*


* Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A144315

Superior Court of the City and County of San Francisco, Nos. 13035657 and 13035658, Bruce E. Chan, Judge.

Perkins Coie, James G. Snell and Sunita Bali for Petitioners.

No appearance for Respondent.

Jose Pericles Umali for Real Party in Interest Derrick D. Hunter.

Susan Kaplan and Janelle E. Caywood for Real Party in Interest Lee Sullivan.

Jeff Adachi, Public Defender (San Francisco), Matt Gonzalez, Chief Attorney, and Dorothy Bischoff, Deputy Public Defender, as Amicus Curiae on behalf of Respondent and Real Parties in Interest.

Stephen P. Lipson, Public Defender (Ventura), and Michael C. McMahon, Chief Deputy Public Defender, for California Public Defenders Association and Public Defender of Ventura County as Amici Curiae on behalf of Real Parties in Interest.

Donald E. Landis, Jr., Assistant Public Defender (Monterey); Law Offices of J.T. Philipsborn and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Real Parties in Interest.